settle said order by inserting the grounds upon which the order was granted. This motion for a resettlement was denied, and from the order entered thereon the defendants appeal.

The original order states that:

"The said justice, * * * immediately after the rendition of the said verdict, having entertained a motion made on his minutes on behalf of plaintiff to set aside the verdict and for a new trial, to be granted on the exceptions taken on behalf of the plaintiff at the trial and upon all the grounds set forth in section 999 of the Code of Civil Procedure, except that the verdict was excessive, because the verdict was contrary to the law and contrary to the evidence, and after hearing, * * * ordered," etc.

The grounds upon which the motion was made sufficiently appear in the order, but the ground or grounds upon which it was granted are not specified. Rule 31 of the general rules of practice provide:

"Where an order grants or refuses a new trial, except on the exceptions taken during the trial, it shall specify the grounds upon which the motion was made and the ground or grounds upon which it was granted."

The learned court below has written an opinion, which the appellate court will consider, in order to ascertain the reason of the court below for granting the application to set aside the verdict and allow a new trial. Bryant v. Allen, 54 App. Div. 504, 67 N. Y. Supp. 89. It appears clearly from this opinion that the verdict was set aside as contrary to the evidence, and not on exceptions taken during the trial. The order appealed from comes within the provisions of rule 31, and the failure to recite the grounds upon which it was granted warrants a reversal.

The order is reversed, with $10 costs and disbursements, and the motion to resettle is granted, with $10 costs.

---

(115 App. Div. 694)

## BARNUM v. WILLIAMS.

(Supreme Court, Appellate Division, Second Department. November 21, 1906.)

CONTRACTS—BREACH OCCASIONED BY DEFAULT OF OTHER PARTY.

A contractor who is prevented from completing work on time by default of the owner of the premises, and thereafter is delayed by a strike, is not liable to the owner as for breach of contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1372-1381, 1446.]

Appeal from Special Term, Nassau County.

Action by Joshua W. Barnum against John T. Williams. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the opinion of Charles H. Otis, referee:

On the 11th day of January, 1902, the plaintiff's assignor, Hecla Iron Works, wrote a letter to the defendant, John T. Williams, making a bid for the fabrication and erection of certain light and ornamental iron work, offering, for the sum of $18,810, to furnish material and perform the labor to complete certain work as shown by the drawings of the defendant on his premises in William street, known as the "Lord's Court Building." On the 21st day of January, 1902, Hecla Iron Works wrote a second letter to the defendant, in which it stated that it would agree to complete its work in from five to six weeks' time,

should it be awarded the contract, and would further agree to have all the material ready for the new stories to be put in place as fast as the steel frame was in place to receive it, and could proceed with the work of the lower stories at once, and could start the setting of the same in two weeks' time, and complete as above stated. The propositions embodied in these two letters were accepted by the defendant by his letter of January 23d. The work in question involved the ornamental work required for four additional stories which the defendant was adding to Lord's Court Building. There was also the iron work for three elevators extending from the ground floor to the new roof, and certain other smaller items which it is needless to mention. Hecla Iron Works proceeded, immediately upon the receipt of the letter of January 23d from the defendant with the fabrication of the stairs for the additional five stories, which was the only part of the work upon which it could enter until it had received plans from the defendant. The Hecla Iron Works was able to proceed with this portion of the work, for the reason that it had constructed the stairs for the original building and had in its possession the necessary data to enable it to proceed at once with the drawings and fabrication of these stairs. They were completed and put in storage on March 3, 1902. On February 20th a formal contract was entered into between the parties, embodying these general features, and fixing April 1, 1902, as the time within which the work to be performed by Hecla Iron Works should be completed. As a matter of fact, beyond the construction of the stairs for the additional stories, Hecla Iron Works was not able to do anything whatever towards the performance of its contract until after the date fixed in the contract for its completion—April 1st —by reason of delays occasioned by the defendant. From time to time drawings were sent forward by the defendant to Hecla Iron Works for various parts of the construction. On April 11th, ten days after the time when the contract was by its terms to have been completed, the defendant sent a revised plan for the general layout of the elevator beams, framing, and partitions. The final plans necessary for the construction called for by the contract were not sent to the Hecla Iron Works until June 24, 1902. It is in evidence and undisputed that Hecla Iron Works would have been able to complete its contract by April 1st, the time mentioned in the contract, had the necessary work in the building and the reception of the plans by the Hecla Iron Works been sufficiently prompt and sufficiently far advanced to enable Hecla Iron Works to proceed with its work; and it is certain that all such work could have been completed by Hecla Iron Works long prior to July 7th, the date of the strike hereinafter referred to.

I am of opinion that all prior correspondence between Hecla Iron Works and the defendant was merged in the contract which was signed February 20th, and regard the letters prior to the signing of the contract as material to this issue only as indicating the time within which Hecla Iron Works had the right to receive the necessary information and to have the building sufficiently far advanced to enable it to proceed without delay with its work in order to comply with the date fixed in the contract, which was undoubtedly framed in relation to the prior correspondence upon the subject. The Hecla Iron Works in every particular had proceeded with its work with the utmost diligence, and for several months substantially all of the material required to complete the work had been in storage in the storehouse of Hecla Iron Works, and could have been set in a very short time, provided the building had been ready to receive it. This work—especially the elevator fronts—is of a character which cannot be set in the building until all the other contractors are practically out of it. In order to set it properly, the building must be what is termed "broom clean," although Hecla Iron Works had done a part of this work in advance of that condition and assumed the risk of the consequences. Substantially all the material required for the building had been fabricated, and practically all of such material had been actually delivered at the premises, before July 7th, and on that day, when the building was first ready to receive them, and when work could first be done in the matter of erecting the stairs, the stairs were sent to the building, but not delivered, because prevented by a strike of the employés of the Hecla Iron Works which was called at noon of that day. At this point in the history of the transaction we find the Hecla Iron Works ready.

willing, and anxious to do all the work called for by the contract. We find that up to that date they had followed closely the other contractors, and sometimes anticipated them in the due order of their work, and there is no evidence that there was any moment during the period from January 23d until July 7th when there was any work on the building which could have been done by the Hecla Iron Works which was not done promptly. On July 7th all of the employés of the Hecla Iron Works struck work on this building upon some alleged or pretended grievance that the defendant had failed to pay some other contractor some amount alleged to be due to him. These employés were members of Local No. 2, Bridge and Structural Iron Workers of America. All competent outside employés in the line of work of the Hecla Iron Works were members of this organization. Only the building in question was struck, and doubtless the true reason for the strike was as a means to enable one Sam Parks, a delegate of this organization, to extort sums either from the owner of the building or from the Hecla Iron Works. Certainly the strike was not called for any alleged or pretended grievance against Hecla Iron Works. No other work then in process by Hecla Iron Works was struck by the members of this organization. During the period of the strike it was impossible for the Hecla Iron Works to procure any competent men with which to complete the building, as is evidenced by the later efforts on the part of the defendant to complete the building himself. Later on, on October 24th, by some arrangement between the defendant and Hecla Iron Works, the stairs which had been fabricated since about March 5th were delivered to the defendant.

Pausing here for a moment, let us see what the rights of the respective parties to the agreement were at this point. Without reference to the strike, I am of the opinion that, by reason of the delays occasioned Hecla Iron Works by the defendant, Hecla Iron Works would have been entirely justified in abandoning the contract at this point, and would have been entitled to recover from the defendant the value of all material and labor furnished by it to Lord's Court Building up to that time on the basis of quantum meruit. The defendant insists that by reason of the strike Hecla Iron Works did abandon its contract at that point, and, if that be the true theory, I am of opinion that Hecla Iron Works are entitled to recover as above stated. Mansfield v. N. Y. C. & H. R. R. Co., 102 N. Y. 205, 6 N. E. 386; Empire T. Co. v. Phila. & R. Coal & Iron Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623; Geismer v. Lake Shore & W. S. Ry. Co., 102 N. Y. 563, 7 N. E. 828, 55 Am. Rep. 837.

But, whatever the contention of the defendant in this regard may be, it is not the fact that Hecla Iron Works did abandon the contract at that time, as distinguished from abandoning the work. It was the desire and intention of Hecla Iron Works to complete this contract at the earliest practicable moment, but it had not been able to do so on October 6, 1902. On July 9th, two days after the strike was called, the defendant wrote a letter to the Hecla Iron Works, in which he notified it under the fourth clause of the contract that he elected to terminate the contract, and that he would proceed under that clause to complete the work and charge the expense of such completion to Hecla Iron Works. This notice was evidently waived and withdrawn, as the parties were negotiating together long after that period in a joint effort to secure the completion of the work; but on October 6th a second notice was sent to Hecla Iron Works under the same fourth clause, to the effect that the defendant elected to terminate the contract and would proceed to complete the iron work and charge the expense of such completion to Hecla Iron Works. The defendant thereupon endeavored to secure the completion of this work, and experts in the same line of business called by the defendant testified that during that period, and while this strike was pending, it would have been impossible to have secured competent workmen to complete the job, as all competent workmen were members of the order mentioned, and would have refused to work. The defendant thereupon, after exhausting, without success, all the ordinary and usual methods of procuring such work to be done, finally entered into a contract with one John Elliott to furnish labor at $1 per hour, both shop and on the building, and to furnish such labor as he could manage to get, but whom he would not guaranty were competent workmen. The defendant proceeded in this wise, working nights and at enormous expense, as the price

was not only high, but the inexperience and inefficiency of the laborers were correspondingly expensive in time. This work was finally completed some time about January, 1903. The total expense incurred by the defendant in its performance, and which he seeks to charge against the plaintiff, amounts to $8,241.54.

It may be that there are some items included in this amount which the defendant would not be entitled to recover under any circumstances, but this becomes immaterial in view of the conclusion which I have reached. I am of opinion that the plaintiff's general contention in this action should prevail:

First. As I have already stated, if the circumstances be so construed as to constitute an abandonment by the Hecla Iron Works on July 7, 1902, it was entitled to recover on the basis of quantum meruit to that date. Simmons v. Ocean Causeway, 21 App. Div. 30, 35, 47 N. Y. Supp. 360; Mansfield v. N. Y. C. & H. R. R. Co., 102 N. Y. 205, 6 N. E. 386.

Second. It appears by the evidence of the defendant's witnesses that the amount paid by the defendant to complete the job, $8,241.54, was the lowest possible amount for which he could have procured the work to be done. The law is well settled in this state that where a contract fixes a time within which the work shall be completed, and the work contracted for is not completed at the time stated by reason of delays occasioned directly by the owner, the contractor may without notice complete the work to be done, and may recover from the defendant the entire additional expense of completion occasioned by such delays. Allamon v. Mayor, etc., of Albany, 43 Barb. (N. Y.) 33; Mansfield v. N. Y. C. & H. R. R. Co., 102 N. Y. 205, 6 N. E. 386. The defendant claims that that amount is $8,241.54. If such claim be well founded, this amount represents the sum which the plaintiff would have been entitled to recover in this action for that part of the work so performed by the defendant in case the plaintiff's assignor had continued to the completion of the work in the same manner as it was performed by the defendant himself. It is conceded that the work was improperly performed, and not in such a manner as would have been accepted by the defendant from the Hecla Iron Works if it had completed the work in the same manner, and yet it was the best result which the defendant was able to secure under the conditions then existing.

Third. Hecla Iron Works was excused from the completion of its contract by the strike. If a contractor is delayed in the completion of his contract by the fault of the owner, his time to complete is thus extended for a reasonable time. Dannat v. Fuller, 120 N. Y. 554, 24 N. E. 815. It has been held that a reasonable time does not include any period, long or short, during which he is unable to proceed by reason of a strike. This, of course, would not be true, if a definite time for completion had been fixed in the contract and the contracting party had not been delayed in any way by the owner. In such case the strike of his employés would not constitute an excuse; but, as in this case, where the contracting party has been delayed by the owner for a period far beyond that necessary to complete, and far beyond the time within which he could easily have completed, except for such delays, the result is different, and if he continues the contract at all, and does not rescind the contract for such reason, then the reasonable time within which he is allowed by law to complete does not include the period of time within which it is utterly impossible for him, as in this case, to proceed. While this case is not on all fours with the cases hereafter cited, I think that it falls within the reason and general principles laid down in those cases. Geismer v. L. S. & M. S. R. Co., 120 N. Y. 563, 7 N. E. 828, 55 Am. Rep. 837; Happel v. Marasco, 37 Misc. Rep. 314, 75 N. Y. Supp. 461. I have not overlooked the case of Blackstock v. N. Y. & Erie Railway Co., 20 N. Y. 48, 75 Am. Dec. 372, but am of opinion that the principles laid down in the Geismer and the Empire Transportation Co. Cases are controlling under the facts of this case. All of the employés of Hecla Iron Works were members of the organization Local No. 2, Bridge and Structural Iron Workers of America, and all competent workmen in this class of work were members of the same organization, so that the Hecla Iron Works was quite as effectually prevented from proceeding with its work as though prevented by the acts of mobs and violence.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Richard T. Greene, for appellant.

William N. Dykman, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

<hr>

(117 App. Div. 411)

PEOPLE ex rel. KOPEL v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

EXTRADITION—INTERSTATE EXTRADITION—AUTHORITY TO DELIVER PERSON AC-
CUSED—DELIVERY TO THE TERRITORIES.

Rev. St. U. S. § 5278 [U. S. Comp. St. 1901, p. 3597], provides that when-
ever the executive authority of any state or territory demands any person
as a fugitive from justice of the executive authority of any state or terri-
tory to which such person has fled, it shall be the duty of the executive
authority of the latter state or territory to cause the fugitive to be deliv-
ered. Section 5270 [U. S. Comp. St. 1901, p. 3591] provides for the extra-
dition of a fugitive from justice to a foreign country and for the extra-
dition of persons who have fled to the United States from any territory
occupied by or under the control of the United States; the provisions all
relating to the surrender by the Secretary of State, and the proceedings
for the delivery of one fleeing from the territory under the control of the
United States being exclusively within the jurisdiction of the United
States courts. By the treaty of Paris the island of Porto Rico was ceded
to the United States, and Act April 12, 1900, c. 191, 31 Stat. 77, provided
for the appointment of a Governor of the island, established a judicial sys-
tem, and provided that the Governor should have all the powers of the
Governors of the territories of the United States. Code Cr. Proc. § 827,
provides the procedure whereby fugitives from justice fleeing to the state
of New York are to be delivered on a requisition on the Governor by the
Governor of any other state or territory. Held, that the extradition of
one fleeing from the island of Porto Rico to the state of New York was
governed by Rev. St. U. S. § 5278, and Code Cr. Proc. § 827.

Appeal from Special Term.

Habeas corpus by the people, on the relation of Abraham Kopel, to obtain relator's release from the custody of Theodore A. Bingham, as police commissioner. From an order dismissing the writ and re-manding relator to custody, he appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRA-HAM, LAUGHLIN, and HOUGHTON, JJ.

Albert R. Page, for appellant.

Robert Johnstone, Deputy Asst. Dist. Atty., for respondent.

INGRAHAM, J. It seems to have been held by the Court of Ap-peals in People ex rel. Corkran v. Hyatt, 172 N. Y. 176, 64 N. E. 825, 66 L. R. A. 774, 92 Am. St. Rep. 706, that no person can or should be extradited from one state to another unless the case falls within the federal Constitution or statutes, and that the power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the states. The Constitution of the United States provides (article 4, § 2, subd. 2) that: